**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 11a0590n.06

**No. 09-4412**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

*Aug 22, 2011*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| ANTHONY CAMPANA, | ) | NORTHERN DISTRICT OF OHIO |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

Before: GIBBONS, STRANCH, and ROTH, Circuit Judges.[*]

**JULIA SMITH GIBBONS, Circuit Judge.** Defendant–appellant Anthony Campana appeals his conviction and sentence for receipt and distribution of material involving the sexual exploitation of minors and for possession of child pornography. For the following reasons, we affirm his conviction and sentence.

I.

In 2005 an Investigative Support Specialist for the Federal Bureau of Investigation ("FBI") assigned to the Exploited Child Unit of the National Center for Missing and Exploited Children ("NCMEC") investigated a report that someone using the Internet service Yahoo! had uploaded a number of images of child pornography to the Internet. After investigating the screen name that

---

[*]The Honorable Jane R. Roth, United States Circuit Judge for the United States Court of Appeals for the Third Circuit, sitting by designation.

uploaded those images and the group to which they were uploaded, other very similar screen names were found to have uploaded images of child pornography to other groups. These similar screen names were registered under names such as "Mr. Anth C." and "Anth C." and were linked to a zip code in Ohio. Further investigation of a list of Internet Protocol addresses from which one of the screen names had been accessed yielded customer information for another screen name registered to Anthony Campana at an address in Fairport Harbor, Ohio. The FBI sent this information to the Cleveland field office.

The FBI conducted surveillance of Campana's residence, obtained a search warrant, and performed a search of Campana's house on May 12, 2006. During the search, an agent interviewed Campana, who verified that he used three email accounts under the screen names linked to the reports. When questioned whether other people had access to his computer, Campana answered that his twenty-two year-old former stepson, Justin Simpson, had used the computer, but Campana had not seen Justin since July 2005.

Ultimately, the search of Campana's home uncovered a box of twenty-one floppy disks in the bedroom closet, a gym bag containing fifty-three disks next to the bed, and two computers in the bedroom. After these items were seized, a computer forensic examination of the evidence found a total of 557 images and 18 videos containing child pornography. Several of the images retrieved from the various media matched the NCMEC report photos. Some of the 275 archived chat conversations discussed the exchange of child pornography with group members. In other chats, Campana engaged in graphic sexual conversations with persons he believed to be minors and sent them pornographic images.

On April 11, 2007, a federal grand jury returned a three-count indictment charging Campana with one count of receipt and distribution of material involving sexual exploitation of minors in violation of 18 U.S.C. § 2252(a)(2), one count of receipt and distribution of child pornography in violation of 18 U.S.C. § 2252A(a)(2)(A), and one count of possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). Campana pled not guilty to the charges and testified at trial that he was unaware of the child pornography on his computers and floppy disks.

During a five-day trial, a question arose as to whether Campana had been in his home for all of the pornography exchanges. Pursuant to his occupation as a truck driver, Campana was required to fill out driver logs reflecting the days he traveled. Campana testified that there was a "pretty good chance" he would lose his job if he did not keep accurate logs. The owner of the trucking company for which Campana worked testified that his company required drivers to maintain travel logs but acknowledged that the log books are referred to as "comic books" in the trucking industry because "they really don't hold much truth to them," and "you can fill them out whatever way you want." The log's purpose is to ensure that drivers do not drive for more than ten hours at a time, but the owner stated that he had given Campana driving assignments that likely exceeded the ten-hour maximum. A computer analyst, called by the defense, testified at trial that on eight days in which Campana's logs indicated that he was out of town, twenty-five files and twenty chats had been created. Other than on those eight days, over a period spanning the creation dates of hundreds of files and chats from December 2003 to May 2006, there were no discrepancies between the logs and the creation of files and chats.

Campana indicated that he moved into his current home in December of 2003 after moving out of the house he had shared with his ex-wife, Doreen Simpson. Regarding who else might have had access to his computer, Campana testified that following his divorce from Simpson, his former stepson, Justin, had access to his computer on occasion. When asked how frequently he saw Justin in his home following the divorce, Campana stated between six and ten times, though he did not know if Justin ever visited while he was not at home because Justin knew where Campana kept a hidden key. Justin, on the other hand, testified that he visited Campana's house on two occasions, once before March of 2005 and once at a July 4, 2005, cookout. He denied using Campana's computer and knowing the location of Campana's spare key to the house.

After Count Two was dismissed, the jury found Campana guilty of Counts One and Three. At sentencing, the district court computed an offense level of 42 and a criminal history category of I, which produced a Guidelines range of 360 months' to life imprisonment. The statutory range for Count One was five to twenty years, and the statutory maximum for Count Three was ten years. Ultimately, the district court sentenced Campana to 240 months' imprisonment on Count One and 120 months' imprisonment on Count Three to run concurrently, fifteen years' supervised release, $5,000 in restitution, and a $200 special assessment. Campana appeals.

II.

Campana first challenges his conviction, arguing that the district court abused its discretion in disallowing questioning upon cross examination that ultimately resulted in the preclusion of the testimony of a desired witness. We review the district court's conduct during trial for an abuse of discretion. *McMillan v. Castro*, 405 F.3d 405, 409 (6th Cir. 2005). That conduct includes the

admission and exclusion of testimony. *Mitroff v. Xomox Corp.*, 797 F.2d 271, 275 (6th Cir. 1986). An abuse of discretion as to an evidentiary ruling exists when we are "firmly convinced that a mistake has been made." *Schrand v. Fed. Pac. Elec. Co.*, 851 F.2d 152, 157 (6th Cir. 1988).

During trial, Campana was never able to call as a witness Sue Southall—a friend of Campana's ex-wife, Doreen Simpson. Upon cross-examination of Simpson, Campana's counsel began a line of questioning about Southall, to which the prosecution objected. Apparently, the defense counsel hoped to elicit a statement from Simpson denying or verifying the fact that she and Southall had conversations about Simpson's prior husband and his pornography problem. After eliciting this statement, Campana ultimately sought to create a possible inference that Campana's former stepson, Justin, downloaded the child pornography onto his computer. The contention was that Justin's interest in pornography could be established by demonstrating that Simpson complained to Southall of her prior husband's pornography problem and worried that "the kids would pick it up." This evidence could then lead to an inference that Justin acquired a pornography habit from his father and that Justin's habit translated into an interest in child pornography as well. After hearing Campana's counsel's explanation, the district court prevented further questioning of Simpson about these conversations because the testimony "ha[d] nothing to do with this case" and, consequently, prevented the calling of Sue Southall.

Campana asserts that this evidence should have been permitted as it was relevant under Fed. R. Evid. 401, which describes "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401; *Old Chief v. United States*, 519

U.S. 172, 178 (1997); *United States v. Lawson*, 535 F.3d 434, 442 (6th Cir. 2008). Campana's argument is unavailing because it simply requires too many leaps of logic to lead to the production of relevant evidence. Indeed, at oral argument Campana's counsel agreed that he was "fishing" for something. The evidence is not, as Campana asserts, probative of whether Justin downloaded the child pornography to Campana's computer for two reasons. First, evidence of Simpson's ex-husband's pornography habit and Simpson's alleged concern that the children would "pick it up" does not tend to show that Justin in fact had a pornography problem. Second, evidence of an interest in pornography does not make an interest in *child* pornography more or less probable and thus fails to corroborate the existence of a fact of consequence—that is, Justin's having downloaded child pornography onto Campana's computer. Though the Supreme Court and the Sixth Circuit have recognized that the standard for relevancy is "liberal," such relevance does not exist when the proposed evidence, if true, is of no consequence to the trial. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 587 (1993); *Churchwell v. Bluegrass Marine, Inc.*, 444 F.3d 898, 905 (6th Cir. 2006); *see also United States v. Wagner*, 382 F.3d 598, 616 (6th Cir. 2004) (holding that evidence was irrelevant when it "concerned facts that, if true, were of no consequence to [the defendant's] trial").

Where, as here, the district court prevented questioning of Simpson and testimony by Southall that offered only a vague, speculative theory that Justin had an interest in pornography, and an even vaguer, more speculative theory as to child pornography in particular, it properly prevented irrelevant evidence that would merely infer a fact that, even if true, is unrelated to the case at hand.

Because we are not firmly convinced that a mistake has been made, we do not find that the district

court abused its discretion. *Schrand*, 851 F.2d at 157.

III.

Campana second challenges his sentence, arguing that the district court reached a

substantively unreasonable sentence and, alternatively, that the Sentencing Guidelines unreasonably

punish child pornography offenders.

A.

We review sentencing decisions for an abuse of discretion, taking into account both the

procedural and substantive reasonableness of the district court's determination. *Gall v. United*

*States*, 552 U.S. 38, 51 (2007); *United States v. Jeross*, 521 F.3d 562, 569 (6th Cir. 2008). Campana

challenges only the substantive reasonableness of his sentence. "[A] sentence may be substantively

unreasonable when the district court selects the sentence arbitrarily, bases the sentence on

impermissible factors, fails to consider pertinent § 3553(a) factors or gives an unreasonable amount

of weight to any pertinent factor." *United States v. Borho*, 485 F.3d 904, 908 (6th Cir. 2007)

(internal quotation marks omitted).

The district court agreed with the Presentence Report's Guidelines calculation, which found

that the "appropriate sentencing range . . . would be 360 months to life." The district court ultimately

sentenced Campana to the statutory maximum, which was 240 months' imprisonment on Count One

and 120 months' imprisonment on Count Three, to be served concurrently, followed by 15 years'

supervised release. Campana challenges the substantive reasonableness of this sentence by

contending that the district court failed to consider five of the seven § 3553(a) factors and primarily

emphasized the "need for the sentence imposed" under § 3553(a)(2).

In fashioning Campana's sentence, the district court stated that it considered the "totality of

the circumstances" and "all of the factors in 18 U.S.C. § 3553(a)" to conclude that a twenty-year

sentence on Count One and a ten-year sentence on Count Two was appropriate. Campana points to

the following excerpt as indicative of the district court's narrow review:

> The defendant's lack of criminal history, his history of gainful employment and the
> likelihood that treatment while incarcerated and a lengthy term of supervised release
> will protect the public and deter Mr. Campana and others from committing similar
> crimes are all the considerations this court has used to fashion a sentence that I
> believe reflects the seriousness of what Mr. Campana actually did in this case.

Campana contends that the district court's sentence was substantively unreasonable because it did

not consider the totality of the circumstances. Campana alleges that the district court gave "an

unreasonable amount of weight" to one of the § 3553(a) factors and ignored, in particular, "the kinds

of sentences available" under § 3553(a)(3) and "the need to avoid unwarranted sentence disparities

among defendants with similar records" under § 3553(a)(6).

Our court has observed that "a ritual incantation of the [§ 3553] factors is not mandatory, but

explicit mention of those factors may facilitate review." *United States v. Bridgewater*, 479 F.3d 439,

441 (6th Cir. 2007) (internal quotation marks omitted); *see also United States v. Johnson*, 403 F.3d

813, 816 (6th Cir. 2005); *United States v. Washington*, 147 F.3d 490, 490 (6th Cir. 1998). Thus,

Campana's argument that the district court did not explicitly consider two factors under § 3553(a)

is not dispositive of the reasonableness of its decision. Indeed, the district court appears to have

relied on several § 3553(a) factors, indicating that it did not give an unreasonable amount of weight

to any pertinent factor. As quoted above, the court considered the nature and circumstances of the offense, *see* § 3553(a)(1), Campana's history and characteristics, *see* § 3553(a)(1), and the need for the sentence imposed, *see* § 3553(a)(2). Additionally, under § 3553(a)(7), the district court assessed the need for restitution to the victims and ordered that such restitution be paid. It also contemplated other sentences pursuant to § 3553(a)(3), as shown in its reference to *United States v. Grossman*, 513 F.3d 592 (6th Cir. 2008). Quoting that decision, the district court recognized that not all courts choose to pursue general and specific deterrence through a long term of imprisonment but rather require extensive counseling and treatment. *Id.* at 597. Aware of alternate sentencing options, the district court in Campana's case chose a long term of imprisonment in light of the facts and the overall weight of the other § 3553(a) factors.

Under the abuse of discretion standard, the district court did not commit a substantive error in sentencing Campana with evident analysis of the § 3553(a) factors. We, therefore, affirm the district court's sentence of 240 months' imprisonment on Count One and 120 months' imprisonment on Count Three.

B.

Campana next argues that, in light of the fact that the Sentencing Guidelines are merely advisory under *United States v. Booker*, 543 U.S. 220, 245 (2005), they are inherently flawed in their punishment of child pornography offenders. He cites a number of district court cases outside the Sixth Circuit to show that sentencing courts have realized that the Guidelines are the "result of congressional mandates, often passed by Congress with little debate or analysis." Whether or not the Sentencing Guidelines properly punish child pornography offenders, the district court in the

present case explicitly stated that it "decline[d] to give the guidelines controlling weight" and instead "relied heavily on the sentencing factors in 18 U.S.C. § 3553(a)." "[P]ersuaded that the guideline provisions relating to child pornography of this nature do not reflect the kind of . . . empirical data, national experience and independent expertise that are characteristic of the commission's institutional role," the district court opted to treat them as non-binding. Thus, we affirm Campana's sentence.

IV.

For the foregoing reasons, we affirm Campana's conviction and sentence.