*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 12a0054p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

    *v.*

THOMAS CUNNINGHAM,
          *Defendant-Appellant.*

No. 10-3092

_____

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 09-00154-001—John R. Adams, District Judge.

Argued: January 19, 2012

Decided and Filed: February 24, 2012

Before: CLAY, ROGERS, and DONALD, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Amy B. Cleary, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Cleveland, Ohio, for Appellant. Laura McMullen Ford, ASSISTANT UNITED STATES ATTORNEY, Cleveland, Ohio, for Appellee. **ON BRIEF:** Amy B. Cleary, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Cleveland, Ohio, for Appellant. Laura McMullen Ford, ASSISTANT UNITED STATES ATTORNEY, Cleveland, Ohio, for Appellee.

_____

## OPINION

_____

CLAY, Circuit Judge. Defendant Thomas Cunningham appeals the district court's judgment sentencing him to concurrent prison terms of 121 months and 120 months after he pleaded guilty to three child pornography offenses, in violation of 18 U.S.C. §§ 2252(a)(2), 2252A(a)(2), and 2252A(a)(5)(B). Defendant raises

assignments of error with several procedural and substantive aspects of the district court's sentence. Because the district court's imposition of Defendant's sentence was comprehensive and legally sufficient, we **AFFIRM**.

## BACKGROUND

### I.    Statement of Facts

Defendant's online activities came to the attention of undercover government agents conducting a child exploitation investigation of an internet user in South Carolina in January 2008. During that investigation, an agent discovered that an individual using the screen name "uncletommy1" sent child pornography images to another user. The investigation revealed that the "uncletommy1" account belonged to Defendant. An analysis of the e-mail account associated with that screen name revealed fourteen visual images and one movie file depicting minors engaging in sexual conduct.

Based upon the information gathered in the course of the investigation, officers for the New Waterford, Ohio, Police Department obtained and executed a search warrant at Defendant's home and found two computers that Defendant admitted belonged to him. An examination of the computers disclosed over 130 visual images and one movie file depicting child pornography, all of which Defendant admitted in his plea colloquy belonged to him. Defendant also admitted that, in addition to the "uncletommy1" account, he used an account entitled "daddystongue1" to enter chat rooms.

Agents conducted a forensic examination of Defendant's computers. That examination revealed that Defendant accessed child pornography for the first time in March 2005. Agents found a particularly high level of activity in the winter and spring of 2008, during which Defendant sent child pornography images to users named "downrange12" and "Lovtolick6868." Agents found some of the images on the "unallocated space" of Defendant's hard drive, possibly indicating that Defendant had attempted to delete some, though not all, of the child pornography on his computer.

The forensic examination also revealed other digital materials not containing illegal depictions but that the district court relied upon in its sentencing decision. First,

Defendant's computer contained pictures of children Defendant took during a pool party, including pictures of his ex-girlfriend's minor niece, which focused on the children's pubic regions. Second, agents found several e-mails sent by Defendant. One e-mail contained the subject line "Re: Glad you liked it" and attached a photograph of Defendant's ex-girlfriend's niece, fully clothed and sitting in a chair. Another e-mail, sent to an account named "SexyFlaGirl19," contained the subject line "mmmmmmmmm" and attached a photograph of the same young girl, again clothed and watching another child play with a toy. Third, Defendant's computer contained images of himself masturbating to photographs of adult females and—in one case—a young child. Defendant sent a video to another user of himself masturbating to the image of the young girl, along with lascivious audio commentary of the act. Defendant claimed that an adult woman sent him the picture of the girl and that the woman told him it was a picture of herself as a child.

On April 1, 2009, a grand jury indicted Defendant for receipt and distribution of child pornography, in violation of 18 U.S.C. § 2252(a)(2) (count one); receipt and distribution of child pornography transported in interstate commerce by computer, in violation of 18 U.S.C. § 2252A(a)(2) (count two); and possession of a computer containing child pornography produced by materials transported in interstate commerce, in violation of 18 U.S.C. § 2252A(a)(5)(B) (count three). Defendant pleaded guilty to all counts.

## II.    Sentencing Background

The district court held a nearly four-hour sentencing hearing on December 15, 2009. The judge stated that he had reviewed the Presentence Report ("PSR"), numerous letters in support of Defendant, the parties' sentencing memoranda, Defendant's psychological evaluation, the victim impact statements provided by the government, and the images that Defendant was found to possess. The court adopted the PSR recommendations of an offense level of 35, which included a 13-level increase based on several specific offense enhancements pursuant to USSG § 2G2.2. The court then reduced Defendant's offense level three points for acceptance of responsibility, yielding

an offense level 32 and a Guidelines range of 121 to 151 months on counts one and two and a restricted range of 120 months on count three.

The district court then heard a lengthy argument from defense counsel, who urged that the nature and circumstances of Defendant's crime supported a sentence below his advisory Guidelines range. Counsel also contested several aspects of the PSR, including the date on which Defendant began obtaining child pornography, the PSR's sexual characterization of the non-pornographic pictures of children found on Defendant's computer, the significance of the images and videos depicting Defendant masturbating, and the reasonableness of the § 2G2.2 child pornography enhancements. After Defendant personally made a statement to the court, the district judge adjourned the hearing without announcing a sentence, explaining that he required more time to consider counsel's arguments and Defendant's statement.

The court reconvened on January 25, 2010. The judge opened the hearing by explaining that he had prepared a written opinion addressing Defendant's arguments in favor of a variance. The court then proceeded to orally summarize its opinion, which was issued the next day. *See United States v. Cunningham*, 680 F. Supp. 2d 844, 862 (N.D. Ohio 2010). The court sentenced Defendant to 121 months of imprisonment on counts one and two and 120 months of imprisonment on count three, all to be served concurrently.

Defendant timely appealed, contesting numerous aspects of the district court's sentencing procedure and the substantive basis for its sentence. Each issue is discussed below.

## DISCUSSION

### I.      Procedural Reasonableness

We review a district court's sentence for abuse of discretion, "whether inside, just outside, or significantly outside the Guidelines range," and for both procedural and substantive reasonableness. *United States v. Bolds*, 511 F.3d 568, 578 (6th Cir. 2007). Procedural reasonableness review "begins with a robust review of the factors evaluated

and the procedures employed by the district court in reaching its sentencing determination." *Id.* at 578 (internal quotation omitted). Specifically, we ensure that the district court properly calculated the Guidelines range, did not treat the Guidelines as mandatory, considered the factors set out in 18 U.S.C. § 3553(a), did not select a sentenced based on clearly erroneous facts, and adequately explained its sentence. *Id.* at 579 (citing *Gall v. United States*, 552 U.S. 38, 51 (2007)). We review the sentencing court's legal conclusions *de novo* and its findings of fact for clear error. *United States v. Moon*, 513 F.3d 527, 539–40 (6th Cir. 2008).

### A.    Imposition of Sentence

In its opinion, the court discussed Defendant's arguments in detail. The court first rejected Defendant's contentions that the § 2G2.2 enhancements were unreasonable and that their frequent application in child pornography prosecutions made them unreliable. The court's review of the United States Sentencing Commission's implementation of statutory changes to the child pornography Guidelines assured the court that the § 2G2.2 enhancements were not unreasonable. *Cunningham*, 680 F. Supp. 2d at 848–53. Moreover, the court explained that, even if it chose not to defer to the § 2G2.2 enhancements, "its sentence would not change." *Id.* at 853.

The court then applied the 18 U.S.C. § 3553(a) factors to Defendant. "In an effort to more fairly judge" the nature of Defendant's conduct, the court viewed the images found on Defendant's computer and expressed shock at the heinousness of the conduct depicted in the photographs. *See id.* at 854–55. With respect to Defendant's risk of recidivism, the court expressed concern regarding studies demonstrating an increased level of recidivism among child sex offenders who viewed child pornography, the pictures from Defendant's computer focusing on the pubic regions of his ex-girlfriend's niece and other children, and the video Defendant made of himself acting out a fantasized sexual encounter with a picture of a child. *See id.* at 855–59. Largely on the basis of the latter two pieces of evidence, the court concluded that Defendant posed a relatively high risk of re-offending. *See id.* at 860.

The court also found Defendant's statement at the December 15, 2009, sentencing hearing "less than compelling," because the court believed Defendant "attempted to minimize his culpability by repeatedly referencing the fact that a majority of his downloading and internet activity involved only adults." *Id.* Additionally noting that Defendant attempted to delete some of his child pornography and that Defendant was "not the worst of the worst" of child pornography offenders, the court denied Defendant's variance request and sentenced him at the bottom of his advisory Guideline range. *Id.* at 861.

Defendant argues that the district court violated Federal Rule of Criminal Procedure 32(i) by preparing its sentencing opinion before announcing its sentence on January 25, 2010. In pertinent part, Rule 32(i) requires a sentencing court to "allow the parties' attorneys to comment on the probation officer's determinations and other matters relating to an appropriate sentence." Fed. R. Crim. P. 32(i)(1)(C). In *United States v. Wilson*, 614 F.3d 219 (6th Cir. 2010), we expressed concern about a district court's application of Rule 32(i) when the court opened a sentencing hearing by announcing the defendant's sentence, handing the parties a written sentencing opinion prepared before the hearing, and recessing to allow the parties to review the opinions for possible objections. *Id.* at 221–22. We described the court's procedure as "somewhat disconcerting," because its decision to prepare a sentencing opinion before conducting a hearing "create[d] the worrisome impression that the district court's decision was etched in stone before the parties had the opportunity to be heard." *Id.* at 222 n.1.

Defendant's comparison between *Wilson* and his own case is less than persuasive. The court in *Wilson* formulated an opinion before giving the defendant an opportunity to argue for an appropriate sentence in court, which essentially imposed a rebuttable presumption in favor of the court's sentence. By contrast, the court in this case issued its opinion after giving the parties a robust opportunity to comment on the probation officer's recommendations and carefully scrutinizing the parties' arguments and evidence.

Before the court held its first sentencing hearing, Defendant filed a sentencing memorandum and the report from a psychological assessment he underwent prior to sentencing. In his memorandum, Defendant argued that the § 2G2.2 enhancements unnecessarily increased his sentencing range and were greater than necessary to achieve the sentencing goals identified in 18 U.S.C. § 3553(a). Additionally, Defendant made the now-familiar arguments that those enhancements were not reliable because they were not the product of empirical research by the United States Sentencing Commission and because they were applied in nearly every federal child pornography prosecution. Defendant also argued that he posed a low recidivism risk and that his decision to voluntarily delete his child pornography merited him a statutory minimum sentence of five years on counts one and two.

At the district court's sentencing hearing on December 15, 2009, the district judge stated that he had reviewed the PSR, numerous letters in support of Defendant, the parties' sentencing memoranda, Defendant's psychological evaluation, the victim impact statements provided by the government, and the images that Defendant was found to possess. The district court then listened to arguments from defense counsel and the prosecutor, witness testimony, and statements from Defendant and his loved ones. The hearing lasted nearly four hours. The court declined to impose a sentence on December 15, 2009, explaining that it required more time "to carefully consider the arguments of counsel, statement of the defendant, [and] statements of those here in support." Then the court reconvened on January 25, 2010, at which time the judge indicated that he had prepared a lengthy written opinion addressing Defendant's arguments.

Defendant proposes that this case is nevertheless comparable to *Wilson* because judges in both cases prepared a sentencing opinion in advance of a sentencing hearing. That comparison is legally insignificant. This purported similarity does not erase the obvious distinction between the cases. Any similarity between *Wilson* and this case would be a product of the court's diligence, not its laxity: the court adjourned the December 15, 2009 hearing before announcing a sentence only because the sentencing hearing had gone too late in the day. Had the court not adjourned, it could have

announced its sentence on December 15, 2009 and, as a result, possibly given Defendant's sentence less consideration. With respect to the forum the court provided Defendant "to comment on . . . matters relating to an appropriate sentence," the cases are dissimilar. Fed. R. Crim. P. 32(i)(1)(C). The judge in the instant case carefully reviewed the parties' submissions, heard extensive arguments, and exhaustively responded to the many arguments Defendant raised in favor of a variance. In all important respects, the district court conducted an exemplary sentencing procedure.

## B.     District Court's Reliance on Recidivism Studies

Defendant further argues that the district court relied on clearly erroneous facts in arriving at its sentence. As we explained in *Wilson*, a court relies on clearly erroneous facts when the "sentencing judge relies upon 'erroneous information'" and "the information in question appears to have been 'an important factor in determining [the] sentence.'" *Wilson*, 614 F.3d at 225 n.3 (quoting *Arnett v. Jackson*, 393 F.3d 681, 686 (6th Cir. 2005), and *United States v. Gonzalez-Castillo*, 562 F.3d 80, 81 (1st Cir. 2009)).

Defendant's most strenuous objection relates to the district court's decision to rely on studies measuring the recidivism rate of child sex offenders, including individuals convicted of "hands-on" sex offenses. In arguing that his risk of recidivism was low, Defendant encouraged the district court to consider data collected by the Sentencing Commission on recidivism rates, which suggest that Defendant had a 6.2% chance of re-offending. The district court eschewed Defendant's reliance on the Commission's data, relying instead on several studies suggesting high recidivism rates for "child sex offenders" and increased rates of recidivism for child sex offenders who admitted to viewing child pornography. *Cunningham*, 680 F. Supp. 2d at 860. The court also explained that it would find Defendant's recidivism risk higher than the Commission's rates because, in the court's opinion, Defendant "fail[ed] to recognize the significance of his own actions." *Id.* at 856. As the court explained:

> Many individuals go through periods of severe depression with little to no support from family and friends. A vast majority of those individuals do not resort to online communities of child pornography to address their loneliness. It is clear to the Court that there is some underlying issue that

has caused Cunningham to seek out child pornography.    Until Cunningham receives some treatment, discovers that issue, and confronts it, the Court believes he is at a significant risk of reoffending.    In response, Cunningham asserts that he now has a more stable life and has no need for that type of material going forward.  While that may be true in the short term, it does little to address the likelihood of Cunningham's returning to child pornography during the next downturn in his personal life.

*Id.*  The court indicated that Defendant's inability to demonstrate that he was unlikely to be subject to recidivism made "a significant sentence . . . necessary to deter" him. *Id.*

Defendant would have preferred the district court use the recidivism figures that the Sentencing Commission compiled for child pornography offenders, but his paramount concern is with the district court's decision to consider statistics measuring the recidivism rate of perpetrators of hands-on offenses.   Defendant overstates the district court's reliance on those statistics.  The court's judgment regarding Defendant's likelihood of re-offending was largely based on such factors as Defendant's explanation for consuming child pornography, the court's judgment that Defendant had not acted to remedy his impulse to do so, the pictures Defendant took of his ex-girlfriend's niece and other children, and the video he made of himself acting out a sexual fantasy with the picture of a child.   Citing those reasons, the court appropriately explained that it accorded the Commission's statistics little weight in assessing Defendant's recidivism risk.  This personalized assessment by the district court is just the sort of consideration required by § 3553(a).

Federal courts have taken different positions on the question of whether possession of child pornography positively correlates with commission of hands-on sex offenses, and the debate remains very much a live one. *Compare Cunningham*, 680 F. Supp. 2d at 855–56, *with United States v. Garthus*, 652 F.3d 715, 720 (7th Cir. 2011) ("It's a mistake to lump together different types of sex offender.").   Until scientific evidence firmly discredits a purported causal link between the two kinds of offenses, we think it is acceptable for a district court to take a position on the question so long as the

court appropriately explains its conclusion.  *Cf. United States v. Apodaca*, 641 F.3d 1077, 1084 (9th Cir. 2011).

It is not necessary, for purposes of this case, to determine whether the district court's reliance on child sex offender studies would have been erroneous had the district court afforded those studies even more weight.  Suffice it to say that the district court's reliance on such studies was not excessive in this case, especially when one considers the manner in which the court comprehensively weighed and balanced a multiplicity of sentencing factors.

## C.     District Court's Consideration of Other Sentencing Factors

Defendant also claims several errors resulting from the district court's assessment of his history and characteristics.  According to Defendant, the district court clearly erred by asserting that he e-mailed images of his ex-girlfriend's niece "for viewing by what he knew to be pedophiles." *Cunningham*, 680 F. Supp. 2d at 860.  Defendant argues that no record evidence supported the conclusion that the persons to whom he sent the images of the young girl were pedophiles; however, at a minimum, circumstantial evidence would suggest that the persons with which he traded were pedophiles.

But even if Defendant's contention was factually correct, the district court's erroneous statement would not be a basis for remand.  A cursory reading of the district court's opinion makes it clear that the identities of the persons to whom Defendant sent the pictures were, at most, a secondary concern for the court.  Rather, the court passingly referred to "pedophiles" while expressing its concern that Defendant resorted to trading child pornography and pictures of a young girl with whom he was personally acquainted to cope with his depression and stress.  The court rejected Defendant's argument that his depression and stress justified his decision to trade child pornography, noting that most other individuals suffering from depression and stress do not resort to child pornography as a form of therapy.  *See id.* at 856.  The court's opinion of the persons with whom Defendant traded appeared to be less important to the court as a sentencing factor than the fact that Defendant undertook to transmit to other persons pictures of children that, while not pornographic, were nevertheless regarded by Defendant to be salacious.

With respect to Defendant's next claim of error, he argues that the district court erroneously concluded that Defendant's transmission of the pictures of the girl "no doubt enhanced his ability to 'trade' for new pictures among that online community." *Id.* at 860. To be sure, it is unclear from the record whether Defendant traded child pornography with other persons. But it was hardly unreasonable for the district court to surmise that Defendant traded child pornography with those persons based on Defendant's extensive personal use of child pornography and his admitted sharing of child pornography with such persons.

Finally, Defendant argues that the district court erred by relying on several child pornography enhancements from USSG § 2G2.2. Relying on USSG § 2G2.2(a)(2), the district court adopted the PSR calculation of Defendant's base offense level of 22. The court then applied the following enhancements, yielding an adjusted offense level of 35: 2 levels for material involving a prepubescent minor, under § 2G2.2(b)(2); 2 levels because the offense involved distribution, under § 2G2.2(b)(3)(F); 4 levels because some of the pornographic material depicted sadistic or masochistic conduct, under § 2G2.2(b)(4); 2 levels because the offense involved the use of a computer, under § 2G2.2(b)(6); and 3 levels because the offense involved at least 150 images, under § 2G2.2(b)(7)(B).

At the sentencing hearing on December 15, 2009, Defendant argued that this Guideline calculation overstated the severity of his offense in comparison to other child pornography offenders. Counsel explained that sixty percent of federal child pornography offenders are found in possession of over 600 images, while Defendant was found in possession of just over 130. The court responded that the statutory maximum sentence of 20 years applicable to Defendant, along with the Guidelines enhancements, accounted for Defendant's culpability relative to other child pornography offenders. The court also explained that the number of images found in Defendant's possession did not "tell the whole story" of a defendant's offense. Rather, the court explained that it was required to consider "[t]he nature of those images, the age of the children, the conduct depicted in the images," and the remaining § 3553(a) factors.

In its written opinion, the district court rejected Defendant's argument that the § 2G2.2 enhancements were unreliable. In response to Defendant's contention that the child pornography Guidelines were not the product of empirical study, the court indicated that the Sentencing Commission moderated congressional influence on § 2G2.2 by implementing a base offense level of child pornography offenses near the statutory minimum sentence and undertaking a "proportionality review" of the provision. *Cunningham*, 680 F. Supp. 2d at 850–51. The court also rejected Defendant's argument that the frequency with which the enhancements applied in other cases rendered them invalid. The court expressed confusion as to why "[t]he fact that certain enhancements apply on a frequent basis . . . serve[s] as a basis for negating the Guidelines." *Id.* at 852. Finally, the court disagreed with Defendant's definition of "average," casting doubt on his assertion that an offender who "own[ed] more than 600 images of prepubescent child pornography containing sadistic and masochistic images" was the "average" offender. *Id.* Ultimately, the court granted deference to Defendant's Guidelines calculation but also explained "that even if [the court] were to disregard the Guidelines in their entirety, its sentence would not change." *Id.* at 853.

The district court's analysis of the § 2G2.2 enhancements generally, as well as their application to Defendant's crime, was sound. We recently held that a district court could not refuse to apply § 2G2.2 if the district court's basis for its disagreement was the fact that Congress adopted the § 2G2.2 enhancements directly instead of in accordance with its usual practice of allowing the Sentencing Commission to formulate Guidelines. *United States v. Bistline*, 665 F.3d 750, 761 (6th Cir. 2012). And in *Bistline*, we reaffirmed the authority of district courts to refuse to apply the § 2G2.2 enhancements on valid policy grounds so long as the basis for the rejection is adequately explained. *Id.*; *see United States v. Herrera-Zuniga*, 571 F.3d 568, 585 (6th Cir. 2009).

Defendant advances a slightly different proposition than the one rejected in *Bistline*, arguing that § 2G2.2's purported lack of empirical grounding makes it unfit for deference. By now we have heard this argument on several occasions and have rejected it each time. *See, e.g., United States v. Overmyer*, 663 F.3d 862 (6th Cir. 2011); *United*

*States v. Dattilio*, 442 F. App'x 187, 193–94 (6th Cir. 2011); *United States v. Campana*, 429 F. App'x 586, 592 (6th Cir. 2011); *United States v. Pizzino*, 419 F. App'x 579, 585 n.7 (6th Cir. 2011); *United States v. Kirchof*, 505 F.3d 409, 414 (6th Cir. 2007). We do the same here, reaffirming the principle that a district court is entitled to rely on the § 2G2.2 enhancements unless it has a reasonable policy basis for not doing so. *See Bistline*, 665 F.3d at 761; *United States v. Brooks*, 628 F.3d 791, 799 (6th Cir. 2011). Therefore, the district court's reliance on § 2G2.2 in fashioning Defendant's sentence was not unreasonable.

## II.     Substantive Reasonableness

Defendant also offers several reasons he believes that the district court's sentence was substantively unreasonable. A sentence is substantively unreasonable if the sentencing court arbitrarily selected the sentence, based the sentence on impermissible factors, failed to consider pertinent § 3553(a) factors, or gave an unreasonable amount of weight to any pertinent factor. *United States v. Collington*, 461 F.3d 805, 808 (6th Cir. 2006). In reviewing the sentence's substantive reasonableness, we consider "the length of the sentence and the factors evaluated . . . by the district court in reaching its sentencing determination." *Herrera-Zuniga*, 571 F.3d at 581 (internal quotation omitted). We "afford due deference" to the sentencing court's sentence if "it is justified in light of the relevant § 3553(a) factors," even if we would have imposed a different sentence. *Id.* at 591.

Because we are entitled to afford a sentence within the advisory Guidelines range a rebuttable presumption of reasonableness, Defendant bears a heavy burden in showing that his sentence at the low-end of his Guidelines range is unreasonable. *Bolds*, 511 F.3d at 581. He has not made that showing. The district court exhaustively considered and discussed the § 3553(a) factors, focusing particularly on the nature and circumstances of Defendant's offense, his history and characteristics, and the need to protect the public from further child pornography offenses by Defendant. *See* 18 U.S.C. § 3553(a)(1), (2).

### A.     Defendant's Psychological Evaluation

Defendant contends that the district court should have given more weight to the psychological assessment he obtained prior to sentencing, but we disagree.  In contending that he deserved a sentence below his Guideline range, Defendant argued that he only turned to child and adult pornography to cope with his girlfriend's decision to break up with him.  In support of this argument, Defendant obtained a psychological evaluation prior to his sentencing hearing, in which he was diagnosed with Major Depressive Disorder and Dependent Personality Disorder.  At the sentencing hearing on December 15, 2009, defense counsel argued that Defendant used child pornography to cope with those disorders.

This argument did not persuade the district court.  The court cast doubt on the pertinence of Defendant's psychological assessment, questioning how Defendant's depression and Dependent Personality Disorder "would lead one in any way to form any interest in child pornography."  In its written opinion, the district court noted the results of Defendant's psychological examination but explained that the psychologist's diagnosis of depression and Dependant Personality Disorder failed "to explain [Defendant's] choice to view child pornography." *Cunningham*, 680 F. Supp. 2d at 857.

The district court acted within its discretion in disregarding Defendant's psychological evaluation. Defendant's psychological evaluation sheds little, if any, light on the § 3553(a) factors and, as a result, does not demonstrate his entitlement to a lower sentence.  We have no reason to doubt the accuracy of the report's documentation of Defendant's personal struggles and its diagnoses of depression and Dependent Personality Disorder.  However, as the district court pointed out, Defendant's personal history and psychological conditions do not set him apart from many other individuals who suffer from the same trials and yet do not resort to child pornography.  For that reason, the psychological assessment provided the district court no basis for concluding that Defendant's history and characteristics warranted a more lenient sentence, nor any basis for concluding that application of any other § 3553(a) factors warranted a more lenient sentence.

Instead of relying primarily on the psychological evaluation, the court believed that other evidence provided a clearer picture of Defendant's wrongdoing and his prospects of re-offending. That evidence included the e-mails Defendant sent with pictures of his ex-girlfriend's niece, the video Defendant made of himself acting out a rape fantasy to a picture of a minor child, the evidence of Defendant's possession of child pornography dating to 2005, Defendant's attempt to delete his child pornography, the court's belief in a possible correlation between child pornography possession and hands-on child abuse, and Defendant's statements in court.[1] *See id.* at 856–60. The court acted within its discretion in discounting the report—which made no mention of Defendant's use of child pornography—just as it could have acted within its discretion to weigh it more heavily.

### B.     District Court's Reliance on Defendant's Legal Conduct

Defendant next argues that the district court erred in considering his legal conduct in assessing his risk of recidivism. In fashioning Defendant's sentence, the district judge considered the fact that Defendant had taken pictures of children that focused on their pubic regions. At the sentencing hearing on December 15, 2009, Defendant argued that he had never made sexual contact with a child. The court disputed that argument, pointing out that the pictures obtained from Defendant's computer of children at a pool party "clearly focused solely on the pubic area of the little girl in question." The court also expressed concern about the pictures of Defendant's ex-girlfriend's niece that Defendant e-mailed to another internet user, explaining that Defendant's transmission of both sets of pictures would affect the length of Defendant's sentence.

---

[1] In his comments at the sentencing hearing on December 15, 2009, Defendant initially suggested that he inadvertently downloaded child pornography while downloading adult pornography and "had no idea" that child pornography was embedded in the adult pornographic material he downloaded. But when the judge asked Defendant whether he denied that he intentionally downloaded all the images for which he had been found in possession, Defendant explained that he was not denying doing so but that he "didn't go looking for" the images. On the basis of this exchange, the district court described Defendant's comments at sentencing as "less than compelling." *Cunningham*, 680 F. Supp. 2d at 860.

In its written opinion, the court explained that "several" of the photographs from the pool party were "cropped in such a manner that only the child's pubic region or buttocks is shown." *Id.* at 858. The court considered the photographs "circumstantial evidence [that] strongly supports that Cunningham was, at a minimum, using photographs of a child he knew in order to build bonds with other pedophiles and likely to obtain more child pornography in the future." *Id.*

The video Defendant made of himself using a picture of a minor child to act out a sex fantasy also affected the district court's sentence. The court described Defendant's behavior in the video as "beyond words." *Id.* at 859. The court considered the video "even more troubling" in light of a study suggesting a high rate of physical sexual abuse of minors among child pornography offenders. *Id.*; *see* Michael L. Bourke and Andres Hernandez, *The 'Butner Study' Redux: A Report of the Incidence of Hands-On Child Victimization by Child Pornography Offenders*, J. of Family Violence, Apr. 2009. Owing to the study's small sample size, the court declined to "draw formal conclusions about the correlation between contact sexual offenses and the viewing of child pornography." *Cunningham*, 680 F. Supp. 2d at 859. Nevertheless, the court concluded that the study "raise[d] the prospect" that viewing child pornography correlates with physical sexual abuse of a minor. *Id.* And "even a remote possibility of a correlation" struck the court as "deeply troubling" in Defendant's case, given Defendant's "willingness to act out a rape fantasy with the photograph of a toddler." *Id.* at 859–60.

Defendant argues that the district court erred by considering this evidence. Because the pictures and the video were not illegal, Defendant argues that they should not have been factors in the court's decision. We disagree. A district court may consider any "information concerning the background, character, and conduct of a person convicted of an offense . . . for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661. The information upon which the court relies "need not be part of the conduct for which [the] defendant was indicted, or even illegal conduct." *United States v. Mull*, No. 94-5833, 53 F.3d 332, 1995 WL 253200, at *2 (6th Cir. 1995) (unpublished

table decision). That information need only relate to one of the § 3553(a) factors. *United States v. Kontrol*, 554 F.3d 1089, 1094 (6th Cir. 2009).

By any measure, the video depicting Defendant acting out a rape fantasy with a child is probative of Defendant's "history and characteristics" and "the need . . . to protect the public from further crimes" by Defendant. 18 U.S.C. § 3553(a)(1), (2)(C). The district court considered the video as evidence in concluding that Defendant may present a danger of physical abuse to children in the future. This reasoning is valid, and the district court did not need to consider Defendant's likelihood of committing a hands-on offense in order to rely on the video. Regardless of whether the video forecasts Defendant's likelihood of committing a hands-on offense, it is certainly probative of his likelihood to further consume child pornography. Therefore, the district court was entitled to consider the video in its application of the § 3553(a) factors.

### C.     District Court's Review of Images Possessed by Defendant

Defendant argues that the district court's decision to view the images that he was found to possess allowed passion and revulsion to guide its sentencing decision. The district judge explained that he "personally reviewed all of the images and videos" found in Defendant's possession "[i]n an effort to more fairly judge" Defendant's conduct. *Cunningham*, 680 F. Supp. 2d at 854. The court expressed shock at the images and videos. As the judge explained:

> [the] written description [of one image file in Defendant's possession] cannot convey the true nature of the image. The image depicts a little girl, likely no more than eight years old. She has a vacant look to her eyes, as if even at her tender age, she understands the cruelty of the event taking place and the impact it will have on her for the rest of her life. Moreover, viewing such a young girl being violated by adult, male genitalia gives the viewer an understanding of how heinous the crime truly is. One cannot describe in writing that image. Rather, one has to see the dull, often vacant expression of the victims to get an ounce of the emotions expressed in those images.

*Id.* at 854–55.  According to Defendant, this language suggests that the district court formulated its sentence on the basis of passion and outrage, rather than reasoned judgment.

This argument is incorrect, because it was completely appropriate for the district judge to view the images found in Defendant's possession.  Additionally, the record indicates that the district court sifted through the various sentencing factors in a measured, logical way.  While the district court was understandably shocked by the images Defendant possessed, the court credited Defendant for voluntarily deleting his child pornography and expressed understanding for the stress that Defendant experienced prior to viewing child pornography. *Id.* at 856–60.  The court also balanced those mitigating factors with several other factors we have discussed in fashioning Defendant's sentence.  The court concluded that Defendant was "not the worst of the worst" of child pornography offenders. *Id.* at 861.  The court also noted that Defendant attempted to delete the child pornography in his possession and took "that fact into account in fashioning its sentence." *Id.* at 857.  In keeping with this reasoning, the court sentenced Defendant at the low end of his Guideline range.  All told, the record betrays Defendant's assertion that the district court erred by viewing the images Defendant was found to possess.

### D.      Duration of Defendant's Illegal Conduct

Finally, Defendant argues that the district court should have lowered his sentence because he engaged in the conduct giving rise to his convictions for what he contends was a relatively short period of time.  The factual underpinning of this claim of error is Defendant's contention that he did not begin downloading and viewing child pornography until 2008.  However, the district court adopted the probation officer's finding that child pornography downloaded in 2005 was found on Defendant's computer, and that factual finding was not clearly erroneous.

### CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's judgment.