NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 19a0620n.06

No. 19-3074

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

ARMANDO V. MERIDA, a/k/a
Armando Velasco, a/k/a Armando
Merida Velasco, a/k/a Merida V.
Armondo,

    Defendant-Appellant.

FILED
Dec 16, 2019
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OHIO

BEFORE:    MOORE, CLAY, and SUTTON, Circuit Judges.

**CLAY, Circuit Judge.** Defendant Armando Merida pleaded guilty to one count of distribution of at least 500 grams of a controlled substance, in violation of 21 U.S.C. § 841(a)(1), after being caught selling cocaine to his co-defendant on June 26, 2018. He was sentenced to 84 months' imprisonment, an upward variance from his Sentencing Guidelines range of 60 to 71 months. Before this Court, Merida contends that his sentence was procedurally unreasonable because it was based on what he says was a clearly erroneous factual finding, namely that he supplied drugs to his co-defendant on an ongoing basis. Because the district court had sufficient reason to find that Merida served as an ongoing drug supplier, we affirm.

**FACTUAL BACKGROUND**

In 2018, Merida pleaded guilty to the instant crime. In his plea agreement, Merida confirmed the accuracy of the following facts.

On June 26, 2018, Merida called his co-defendant, Willie Benton, to coordinate a meeting. Merida arrived at Benton's house in a car driven by a third party. He entered Benton's house carrying a box containing approximately four kilograms of cocaine, and, shortly thereafter, left with $94,190. Merida got in the passenger seat of the car and was driven away, only to be stopped by Drug Enforcement Administration agents. The agents recovered the $94,190 from Merida's vehicle, and later recovered the four kilograms of cocaine from Benton's house pursuant to a search warrant.

The presentence report ("PSR") prepared for Merida's sentencing hearing calculated an applicable guidelines imprisonment range of 60 to 71 months. Prior to the hearing, the district court informed the parties that it was considering varying up from this range based on the 18 U.S.C. § 3553(a) factors, including: "[t]he nature and circumstances of the offense"; "[t]he history and characteristics of the defendant, including his criminal history"; and "[t]he need for the sentence imposed to reflect the seriousness of the offence, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant." (Order, R. 41 at PageID #169–70) (citing 18 U.S.C. § 3553(a)(1)–(2)).

At Merida's sentencing hearing, the court put forward the same guidelines calculations identified in the PSR. It heard the parties' arguments as to that calculation and as to the potential upward variance. In the course of that argument, the court asked the government if Merida served as a "supplier" for Benton. (Sent'g Hr'g Tr., R. 68 at PageID #542.) The government affirmed that the evidence showed Merida was a supplier, and Merida responded that while "in the technical sense of the word, he supplied Mr. Benton with the cocaine on [June 26, 2018]," there was "nothing else in the evidence to suggest that [he] supplied Mr. Benton on any other day, at least nothing that

was provided to defense counsel." (*Id.* at #542–43.) When asked for confirmation of Merida's point, the government argued that while Merida was indicted based only on the June 26, 2018 transaction, evidence in the record—including telephone recordings and the fact that Benton had paid less than market rate for the cocaine, suggesting a line of credit was extended—indicated this was an ongoing supplier relationship. (*Id.* at #544.) Merida disputed this characterization of the evidence and argued that telephone recordings suggesting Merida did not know how much Benton owed him and Merida's modest lifestyle showed he was not a supplier. (*Id.* at #545.)

The court went on to make findings under 18 U.S.C. § 3553(a), including—as relevant here—that Merida was acting as a cocaine supplier. Based on its combined findings, the court concluded that the guidelines imprisonment range was not sufficient and applied an upward variance to 84 months' imprisonment.

In response to the court's *Bostic* question, *see United States v. Bostic*, 371 F.3d 865 (6th Cir. 2004), Merida objected to the upward variance based on the court's characterization of Merida as "a supplier other than the person just bringing the drugs on this single occasion." (Sent'g Hr'g Tr., R. 68 at PageID #551–52.) The court noted its skepticism that this was a one-time occurrence, but indicated that, even if the parties stipulated that this was a one-time transaction, "I still think it meets the definition of supplier." (*Id.* at #552.) The government declined to make this stipulation, and so the court decided to vacate the 84-month sentence it had just handed down to allow the parties to present additional evidence about whether this was a one-time transaction.

The government then presented witness testimony from a police officer who had participated in the investigation leading to Merida's indictment, Officer Michael Gilbride. Merida did not put forward any witnesses.

In his testimony, Officer Gilbride spoke to phone conversations he heard between Merida and his co-defendant Benton subject to a wiretap that lasted from May 18, 2018 to June 26, 2018. Among other conversations, Officer Gilbride listened in on a May 19, 2018 conversation that, based on his twenty years of experience as a police officer and his participation in over a thousand narcotics investigations, he believed to be setting up a drug deal. Officer Gilbride provided his interpretation of the call, presented in brackets alongside Merida and Benton's actual statements below.

> Merida: "Hey, you got more of them?" [(Have you "checked all of the drug proceeds from cocaine previously provided by [me] on consignment[?]")]
> Benton: "You want me to go there?" [(Do you want me to "deliver the drug proceeds [I] currently ha[ve] in [my] possession[?]")]
> Merida: "No."
> Benton: "I'm almost there, not all the way." [(I have "collected almost all of the proceeds . . . but [have not] collected all of the proceeds.")]
> Merida: "Okay. All right. I'll be there tomorrow, today." [Let's meet tomorrow.]
> Benton: "Okay. Tomorrow."
> Merida: "Okay. All right."

(*See id.* at #556–57.)

Officer Gilbride also testified about a May 29, 2018 phone call, in which Merida asked Benton how much Benton owed him, and Benton responded, "I don't even know, man. We need to talk." (*Id.* at #560.) Following this exchange, Merida and Benton arranged to meet, and after the meeting, Benton "started making phone calls to all of his drug clients telling them the cocaine was on its way." (*Id.*) Officer Gilbride also testified that Merida came to Benton's home approximately three times during the period he was surveilling Benton, including the June 26 meeting, (*id.* at #564, 566), and testified that after the face-to-face meetings, Benton would similarly call his clients to tell them "drugs would be coming soon." (*Id.* at #571–72.)

The government also introduced into evidence a portion of a search warrant for Benton's house executed by Officer Gilbride. (*Id.* at #559; *see also* Sent'g Hr'g Tr., Ex. 2.) This warrant excerpts further conversations between Merida and Benton and provides commentary from Officer Gilbride. In that warrant, Gilbride states that he believes that, in the May 29, 2018 conversation excerpted therein, Benton told a customer that "his cocaine supplier (Merida) just stopped by Benton Jr.'s residence and informed Benton Jr. he would be getting a shipment of cocaine this weekend or the following weekend." (Sent'g Hr'g Tr., Ex. 2.)

On cross, Officer Gilbride admitted that his reports and video footage did not indicate that any drugs or money were exchanged during meetings between Merida and Benton. He agreed that he had no evidence that Merida was supplying Benton with cocaine until he began listening to Benton's phone calls, but he did have evidence that another individual had sold Benton cocaine. He also confirmed that he observed Merida working a construction job, that Merida had a modest lifestyle, and that no drugs or bulk money were found in Merida's house when it was searched pursuant to a warrant. And finally, Officer Gilbride testified that someone else was driving the car during the June 26 deal, that the money was placed behind the driver's seat, and that the driver had no license and was found to be in the country without authorization. This person was not further investigated.

Based on this evidence, the court found that Merida acted as more than a one-time supplier to Benton. The court again found an 84-month sentence to be "sufficient, but not greater than necessary," and noted that it stood by its prior findings and sentence. (Sent'g Hr'g Tr., R. 68 at PageID #587.) Merida reiterated his objection to the upward variance, and the hearing ended.

Merida subsequently filed this timely appeal.

**DISCUSSION**

On appeal, Merida argues that his sentence is procedurally unreasonable because it is based on a clearly erroneous fact, namely the district court's finding that he served as an ongoing supplier. Because this procedural-reasonableness challenge was presented to the district court and therefore was properly preserved, we review it for an abuse of discretion. (*Id.* at #543–45, 552, 585, 588); *see United States v. Parrish*, 915 F.3d 1043, 1048 (6th Cir. 2019) ("To preserve challenges to procedural sentencing errors for appeal and avoid plain error review, a defendant generally must raise his objection during the sentencing proceeding.").

A sentence is procedurally unreasonable if it is based on a clearly erroneous fact. *Gall v. United States*, 552 U.S. 38, 51 (2007). A sentencing court may appropriately rely on facts it finds to be true by a preponderance of the evidence. *United States v. Gates*, 461 F.3d 703, 708 (6th Cir. 2006). We will find a court's determination of a fact clearly erroneous only if we are "left with the definite and firm conviction that a mistake has been committed." *United States v. Saba*, 526 F. App'x 489, 490 (6th Cir. 2013) (quoting *United States v. Orlando*, 363 F.3d 596, 603 (6th Cir. 2004)). And even if we find that a fact is clearly erroneous, there is procedural error only if the sentencing court relied upon that fact by treating it as an important factor in determining the defendant's sentence. *United States v. Cunningham*, 669 F.3d 723, 730 (6th Cir. 2012).

The sentencing court had ample evidence to ground its finding that Merida was a supplier. It found that there was an ongoing relationship between Merida and his co-defendant, Willie Benton, because they met on multiple occasions, had multiple conversations about the receipt of drugs, and because Merida kept Benton apprised of his schedule. (Sent'g Hr'g Tr., R. 68 at PageID #544–45, 580.) The court concluded that Merida had supplied to Benton before based on the amount of drugs and cash involved in this transaction. (*Id.* at #552, 581–82.) It also reasoned that

Merida's use of other names and phones not registered in his name suggested he had developed a *modus operandi* over a period of selling. (*Id.* at #581.) Each of these facts reasonably suggests Merida was more than a one-time supplier. Together, they convince us that the district court did not clearly err in finding so.

We note, however, that in making its finding, the district court mischaracterized Officer Gilbride's testimony regarding calls between Benton and his alleged clients. Officer Gilbride twice testified that Benton would call his clients after Merida left Benton's house to tell them that drugs would be coming soon. (*See id.* at #560 ("After the meeting with Mr. Merida, Mr. Benton started making phone calls to all of his drug clients telling them the cocaine was on the way."); *id.* at #572 (describing Benton's calls as indicating that Benton's "drug guy just came and get ready because he's going to bring me some cocaine" and that "drugs would be coming soon").) Officer Gilbride's testimony did not suggest Benton's calls indicated that Merida had actually given Benton any drugs. However, the district court described those calls as Benton "notifying his customers that he now has drugs to distribute" and "talking with his customers [to say] that he now has drugs to distribute." (*Id.* at #583, 586.) This characterization is incorrect. Officer Gilbride did not indicate that Benton had affirmatively received drugs from Merida on any date other than June 26, the day that Merida has admitted to providing drugs to Benton. The district court's characterization of the calls suggests that Benton confirmed that drugs arrived on at least two other occasions. It was clear error for the court to conclude that Benton's calls stated he had been supplied with drugs on other occasions.

Nevertheless, even if that underlying factual finding was clearly erroneous, this error was harmless. *See Williams v. United States*, 503 U.S. 193, 203 (1992) (error is harmless if it "[does] not affect the district court's selection of the sentence imposed"). Even if the district court

mischaracterized Officer Gilbride's testimony as to Benton's calls to his clients, the actual content of that testimony reasonably supported the court's ultimate conclusion that Merida actually supplied Benton with drugs on multiple occasions. And Officer Gilbride affirmed in the search warrant presented to the court that he believed these calls indicated that Merida would deliver a supply of drugs to Benton in the first or second weekends of June 2018, (Sent'g Hr'g Tr., Ex. 2), also supporting a conclusion that Merida was a repeat supplier. The district court's factfinding as to Merida's status as an ongoing supplier was not clearly erroneous simply because the district court mischaracterized one of the many pieces of evidence underlying it.

The record before us also demonstrates that the district court engaged in a reasonable factfinding process in concluding that Merida was an ongoing supplier, and that it afforded Merida the opportunity to disprove that conclusion along the way. Rather than base its finding on the evidence and argument originally presented, the court vacated its initial sentence to allow the parties to present evidence as to whether Merida was a repeat supplier. (Sent'g Hr'g Tr., R. 68 at PageID #553.) It articulated its reasoning, explicitly noting each of the previously mentioned reasons for its finding. While it did not explicitly state that it was applying the preponderance of the evidence standard, it clearly compared the evidence that Merida was a supplier to the evidence that he was a middleman, as Merida argued. (*Id.* at #581–87.) It noted that Merida's middleman argument was not supported by facts in the record. (*Id.* at #583.)

Indeed, the evidence suggesting Merida was not an ongoing supplier was thin. Merida did not present any evidence of his own to show that the court's finding was unreasonable, never mind evidence that affirmatively disproved the finding. To be sure, he argued the point. Merida's counsel pointed out that Merida did not know how much Benton owed him, and suggested he would have if he were a supplier. (*Id.* at #545.) She noted that Merida had a modest lifestyle, which

implied that he was not wealthy from drug sales. (*Id.* at #545, 578–79.) She contended that because another individual was present for the June 26 transaction, Merida must have been a middleman. (*Id.* at #579.) Finally, she argued that Merida was only observed for a little over a month, and this was insufficient to show an ongoing supplier relationship. (*Id.* at #579–80.) But none of these arguments undermines the court's stated reasons for its finding, disproves the court's finding, or clearly outweighs the evidence suggesting that Merida was more than a one-time supplier.

Thus, there was no clear error in the district court's finding that Merida was an ongoing drug supplier. Accordingly, we need not reach the question of whether the district court treated this fact as an important factor in its sentencing decision. Because this factual finding was not clearly erroneous, the district court was entitled to rely upon it.

## CONCLUSION

For all of the foregoing reasons, we **AFFIRM** the defendant's sentence.