NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0112n.06

Case No. 22-5112

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**
Mar 06, 2023
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
|     Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE MIDDLE |
| STEVEN R. GORDY, | ) | DISTRICT OF TENNESSEE |
|     Defendant-Appellant. | ) | |
| | ) | |
| | ) | O P I N I O N |

Before: COLE, GIBBONS, READLER, Circuit Judges.

COLE, Circuit Judge. Steven Gordy was sentenced to 300 months' imprisonment after pleading guilty to eleven child pornography charges. Over Gordy's objection, the district court imposed this sentence based on a Sentencing Guidelines range recalculated due to statutory maximums. In so doing, the court considered both the mitigating and aggravating factors laid out in Gordy's presentence investigation report and at sentencing. Gordy now challenges his sentence on three grounds: (1) the court's Guideline range calculation, (2) the court's handling of background information relating to Gordy's abusive childhood, and (3) the court's treatment of expert testimony regarding Gordy's risk of reoffending. We affirm.

## I. BACKGROUND

As the troublesome facts underlying Gordy's child pornography convictions are only peripherally relevant to the specific, primarily procedural arguments on appeal, we focus only on the most relevant background information.

Gordy was charged with and convicted of ten counts of production of child pornography and one count of possession of such arising out of his years-long sexually abusive relationship with his then-minor daughter. In advance of sentencing, the U.S. Probation Office prepared a presentence investigation report ("PSR"). The PSR calculated Gordy's Sentencing Guidelines range as life imprisonment based the characteristics of his offenses (such as his daughter's age and the sadistic or masochistic conduct involved), the necessary enhancements due to the specifics of his offenses (such as the pattern of sexually abusing a minor), and his criminal history (one conviction for driving while impaired). But because both of his statutes of conviction carry statutory maximums, the PSR determined a life sentence could not be imposed. Instead, the PSR calculated a Guideline sentence of 3,720 months (310 years) based on the combined statutory maximums.

Gordy objected to this Guideline sentence calculation, arguing that the ultimate recommendation is three times a life sentence (based on his assertion that life equals 470 months), and that no statute or Guideline required stacking his convictions' statutory maximums. He subsequently requested a downward variance, again challenging his Guideline sentence and seeking mitigation due to his traumatic childhood and abusive upbringing. As further mitigating evidence, Gordy submitted expert testimony on his low risk of reoffending. The expert witness, Dr. Kimberly Brown, analyzed Gordy's risk of reoffending using two leading statistical risk assessments. One assessment placed him in the second-lowest risk category ("Below Average") and one placed him in the middle of the risk range ("Moderate"), for a combined "total risk score . . . in the Low range."

At sentencing, the district court overruled Gordy's Guideline objection. Later, Dr. Brown testified about her risk assessments, answering questions on direct, cross, and redirect

examinations. Both parties then made arguments in support of their respective sentencing recommendations. During an exchange with Gordy's counsel, the district court expressed concern about the uncorroborated nature of some of the facts about Gordy's childhood, which Gordy reiterated in support of his motion for a downward variance. The district court declined defense counsel's offer to call Gordy to testify about these facts, on the grounds that evidence was closed. Instead, the court articulated its analysis of the reliability of disputed facts based on the source of the information.

In evaluating the § 3553(a) factors, the court discussed Gordy's risk of reoffending. Relevant here, the court reiterated some of the government's concerns, such as risk assessments as a point in time calculation, the unavoidable limitations in factors that can be considered in a single test, and that the report considered Gordy's self-reporting of his childhood. Considering the government's modified request for a 360-month (30-year) sentence—down from its original 480-month (40-year) request—and Gordy's request for a 180-month (15-year) sentence, the district court sentenced Gordy to a combined term of 300 months' (25 years') imprisonment.

Gordy timely appealed, challenging (1) the court's Guideline range calculation, (2) the court's consideration of background information in the PSR regarding his abusive childhood, and (3) the court's treatment of expert testimony about his risk of reoffending.

## II. ANALYSIS

### A. Sentence Recommendation Calculation

Gordy first attacks the calculation of his Guideline range. As he challenged the procedural reasonableness of his sentence below, we review the district court's decision for an abuse of discretion. *United States v. Taylor*, 800 F.3d 701, 713 (6th Cir. 2015).

"Sentencing a defendant convicted of multiple counts can be tricky." *United States v. Aguilar-Andres*, 780 F. App'x 231, 233 (6th Cir. 2019) (quoting *United States v. Bivens*, 811 F.3d 840, 842 (6th Cir. 2016)). Here, Gordy's Guideline sentence would exceed his statutory maximum on a given count. *See id.* at 232–34; *see also United States v. Gaskin*, 587 F. App'x 290, 298 (6th Cir. 2014); *United States v. Souders*, 747 F. App'x 269, 271, 277 (6th Cir. 2018); *United States v. Faulkner*, 730 F. App'x 325, 328 (6th Cir. 2018). This is where Gordy's confusion arises. He seemingly conflates the district court's stacking of statutory maximums to calculate his non-life Guideline range with the court's discretion to impose a defendant's sentence for each count as consecutive to or concurrent with the others. *Compare* U.S.S.G. § 5G1.2(d) (nondiscretionary stacking: "shall run consecutively"), *with* 18 U.S.C. § 3584(a) (discretionary: "terms may run concurrently or consecutively").

We begin with the district court's sentencing calculation. First, the PSR grouped his ten closely related production counts to determine a "combined adjusted offense level" for that group. After making the appropriate upward and downward adjustments, the PSR assigned Gordy a "total offense level" of 43. Based on this total offense level and his criminal history (Category I), the Guidelines produced a sentencing range of life imprisonment—referred to as Gordy's "total punishment."

But, as the PSR correctly noted, Gordy cannot be sentenced to life, as all eleven counts of conviction have lesser statutory maximums of either 10 or 30 years. In such a case, his Guidelines-recommended sentence must be recalculated with reference to the statutory maximums. *See, e.g.*, *United States v. Graham*, 327 F.3d 460, 465–66 (6th Cir. 2003); *Aguilar-Andres*, 780 F. App'x at 232–34; *Gaskin*, 587 F. App'x at 298; *Faulkner*, 730 F. App'x at 328; *Souders*, 747 F. App'x at 271. "For convictions on multiple counts, the Guidelines range is not replaced by the statutory

maximum on any count." *United States v. Buchanan*, 933 F.3d 501, 512 (6th Cir. 2019). Instead, "in cases in which the sentence on the count with the highest statutory maximum is less than the total punishment, *courts must stack the sentences that do not carry mandatory consecutive sentences* 'to the extent necessary to produce a combined sentence equal to the total punishment.'" *Graham*, 327 F.3d at 465 (emphasis added) (quoting and applying U.S.S.G. § 5G1.2(d)). So where "total punishment" is the "combined length of the sentences . . . determined by the court after determining the adjusted combined offense level and the Criminal History Category," U.S.S.G. § 5G1.2 cmt. n.1, the statutory maximums are "stacked" until the combined total reaches the previously calculated "total punishment."

As none of the relevant statutes requires Gordy's sentences to run consecutively, the district court stacked the statutory maximum for each count, resulting in a revised sentence recommendation of 3,720 months (310 years). *See* U.S.S.G. § 5G1.2 cmt. n.1. Gordy correctly points out that "[f]or all counts that do not statutorily require a consecutive sentence or specific sentence," the court "shall impose that total punishment on each such count." U.S.S.G. § 5G1.2(b). In stacking his statutory maximums, the district court did just that—imposing the total punishment possible (the statutory maximum) on each count.

Where we differ from Gordy is the interpretation of the Guidelines' direction to impose his sentences consecutively "only to the extent necessary to produce a combined sentence equal to the total punishment." U.S.S.G. § 5G1.2(d). We look to the relevant Guidelines text in full: "If the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the other counts shall run consecutively, but only to the extent necessary to produce a combined sentence *equal to the total punishment*." *Id.* (emphasis added).

Gordy relies on the Guidelines' direction that "§ 5G1.2(d) requires only *the least amount of stacking necessary to reach 'total punishment'*" to argue that his recalculated sentence range (3,720 months) is more than three times his initial Guidelines range of life—which he asserts equates to 470 months. Underlying this argument is the premise that a life sentence correlates to a defined term of years or month. But neither this court nor the Guidelines assign a number of months or years to a life sentence, nor does either provide a calculation for considering life expectancy when determining just how long a "life" sentence would be for an individual defendant. *United States v. Bass*, 843 F. App'x 733, 737 (6th Cir. 2021); *see United States v. Sweeney*, 891 F.3d 232, 240 (6th Cir. 2019) (acknowledging that a 35-year sentence "may in fact be a life sentence"). Instead, where a life sentence is the "total punishment" calculated by the Guidelines, there does not appear to be a limit to sentence stacking "to the extent necessary to produce a combined sentence equal to the total punishment"—because there is no number of months or years provided as a benchmark "equal to" life.[1] *See United States v. Kirby*, 938 F.3d 1254, 1258 (11th Cir. 2019) ("By definition, life imprisonment lacks a fixed term."). The district court acknowledged as much in agreeing that the recalculated Guideline sentence "is effectively more than a life sentence," but that "under the law . . . you stack the statutory maximums . . . and that becomes your guideline sentence."

Notably, this "stacking" is distinct from—and a precursor to—the district court's discretion to impose sentences consecutively or concurrently. *Compare* 18 U.S.C. § 3584*, with* U.S.S.G. § 5G1.2(d). While the Guidelines typically serve as the "meaningful benchmark" and starting point for sentencing, *Peugh v. United States*, 569 U.S. 530, 541 (2013); *Gall v. United States*, 552

---

[1] While Gordy argues that the Sentencing Commission has defined a life sentence as 470 months, that definition is part of a statistical sourcebook and not a part of the Guidelines. *See* U.S. Sentencing Comm'n, *Sourcebook of Federal Sentencing Statistics* 166 (2017).

U.S. 38, 50 n.6 (2007); *United States v. Bistline*, 720 F.3d 631, 633 (6th Cir. 2013), here, they cannot do so as Gordy's Guideline range of life imprisonment is impermissible in light of the statutory maximums tied to his convictions. So, in lieu of the life sentence, the stacked statutory maximums provide the "benchmark" for a district court in the sentencing process. Given the calculation's severity, the district court seemed to acknowledge that such a high Guideline recommendation would not even be a bargaining point for the parties; the court just first needed to "pronounce under the law what [it] think[s] the correct guideline . . . sentence is." Only once a proper benchmark is established can the court consider any party's sentencing request or exercise its discretion to impose sentences consecutively or concurrently.

The court utilized the discretion it actually had in Gordy's favor. The court acknowledged its intent to impose a sentence that would not "be a life sentence," attempting to ensure he would "have an opportunity to be released." After working through what it believed to be an appropriate term of imprisonment on the ten group counts (300 months/25 years), the district court ran the sentences for all of Gordy's eleven federal counts concurrent with each other and with some of his potential or impending terms of state imprisonment.

In sum, Gordy's "total punishment" calculated by the Guidelines for his ten production counts was life. But because all of his counts of conviction have lesser statutory maximums, a life sentence is illegal, so the court recalculated his Guideline recommendation as the combination of his eleven statutory maximums. Though the calculation could be considered extreme, it was not in error.

Gordy is not alone in challenging how a 3,720-month (310-year) sentence recommendation is allowed, when a life sentence is not. *See, e.g.*, *Faulkner*, 730 F. App'x at 328 (320-year recommendation); *Souders*, 747 F. App'x at 271 (280-year recommendation). Indeed, it is a legal

fiction that any defined recommended sentence—even one of hundreds of years of imprisonment—would be an "adjust[ment] downwards" from a life sentence. *See Souders*, 747 F. App'x at 271. And yet district courts impose, and appellate courts affirm, sentences based on this premise. *See, e.g., id.* at 271–74 (affirming a sentence based on a 280-year sentence recommendation where a life sentence was above statutory maximum); *Faulkner*, 730 F. App'x at 328 (same but with 320-year recommendation); *Kirby*, 938 F.3d at 1258 (120-year sentence for production and possession of child pornography). But the validity of this premise is not before us today. We are tasked with answering only the narrower question of whether the district court abused its discretion in its calculation of Gordy's sentence recommendation, and for the reasons outlined above, we conclude that no abuse of discretion occurred.

**B. PSR Background Information**

Gordy contends that the district court erred in discrediting background information contained in the PSR about his childhood of sexual abuse, contrary to Federal Rule of Criminal Procedure 32. Because he did not raise a challenge to the district court's approach to handling the unverified background information below, we review this issue for plain error. *See United States v. Vonner*, 516 F.3d 382, 385 (6th Cir. 2008) (en banc). Gordy must therefore "show (1) error (2) that was obvious or clear, (3) that affected [his] substantial rights and (4) that affected the fairness, integrity, or public reputation of the judicial proceedings." *Id.* at 386 (quotations omitted). He relatedly contests the district court's denial of counsel's request to present Gordy's testimony after the court raised concerns about some of the uncorroborated background information. Because the district court has "control over the mode and order of examining witnesses and presenting evidence," we review this challenge for abuse of discretion. Fed. R. Evid. 611(a); *see United States v. Vinson*, 606 F.2d 149, 155–56 (6th Cir. 1979) (citing Fed. R. Evid. 608(b)) (finding no

abuse of discretion where the court refused cross-examination because "such determinations under the [Rules of Evidence] are vested 'in the discretion of the (trial) court'").

There are two distinct issues at play here: how the court must handle disputed PSR information, and how the court can handle sentencing-related background information more generally. The Federal Rules of Criminal Procedure permit a party to object to "material information" in the PSR. Fed. R. Crim. P. 32(f). Objections must be submitted in writing, and the probation officer may then address them and "revise the presentence report as appropriate." *Id.* Any unresolved objections are submitted to the court along with the PSR. Fed. R. Crim. P. 32(g). If either party disputes the PSR's recitation of the information as written, the Rules also dictate how the district court should or must handle disputed versus undisputed information, Fed. R. Crim. P. 32(i)(3), and our case law explains what a "dispute" is, *see, e.g.*, *United States v. Lang*, 333 F.3d 678, 681 (6th Cir. 2003) (citation omitted) (finding unsubstantiated comments by attorney "not sufficient to give rise to a 'dispute' within the meaning of Rule 32").

Aside from formal objections or disputes, as the district court emphasized, "just because the probation officer says someone said something doesn't mean it's true, particularly when the other side challenges it." (Sentencing Tr., R. 98, PageID 499.) This is in line with our circuit's rule that while courts often defer to the probation officer's recommendations, they are not binding: "A district court is always free to accept or disregard a probation officer's findings[.]" *United States v. Guthrie*, 144 F.3d 1006, 1012 (6th Cir. 1998) (citing *United States v. Patrick*, 988 F.2d 641, 646 (6th Cir. 1993)). Such skepticism is particularly warranted when information is unsubstantiated or self-reported, or when the sentence imposed would be unaffected by acceptance or rejection of the finding. *See, e.g.*, *United States v. Bacon*, 617 F.3d 452, 457–58 (6th Cir. 2010) (endorsing district court's skepticism of the defendants' "self-reports [of] lots of volunteer

activities" in support of mitigation); *United States v. Wiant*, 314 F.3d 826, 832 (6th Cir. 2003) ("At the hearing, Wiant agreed that the objection was irrelevant because it had no effect on the Sentencing Guidelines[.]").

As to sentencing-related facts, "[t]he Sentencing Guidelines and this circuit's case law have set a low bar for the kinds of evidence sentencing judges may rely on[.]" *United States v. Mayle*, 334 F.3d 553, 558–59 (6th Cir. 2003) (quoting *Wiant*, 314 F.3d at 832) (discussing U.S.S.G. § 6A1.3(a)). So long as the "information has sufficient indicia of reliability," even inadmissible evidence can be considered. U.S.S.G. § 6A1.3(a).

Here, both parties called into question some of the background information contained in the PSR. Gordy denied the PSR's characterization of a few interactions between him and his daughters, including whether he sexually abused his two other minor daughters and the alleged occurrence of a violent encounter after being rejected by one of his daughters. Without rejecting any fact in particular, the government casted doubt on Gordy's explanation of his traumatic childhood in general, pointing to the fact that Gordy's "allegations of sexual abuse have not been subjected to a polygraph test."

Gordy is correct that an "*objecting* party must produce evidence in support of its objection." But as neither party objected to any "material information" included in the PSR pursuant to Federal Rule of Criminal Procedure 32, neither is an "objecting party," and the remaining rules relating to PSR objections do not apply. *See* Fed. R. Crim. P. 32(f). Instead, the district court characterized these challenges as a reliability issue. And all information considered at sentencing—regardless of whether the information falls under Rule 32's objection or dispute purview—must be reliable.

Here, the district court clearly explained what it required in order to find a given piece of information reliable and how his reliability standards applied to the challenged information. As to

reliability, the district court credited information relating to the images submitted into evidence, statements by Gordy about firsthand experiences, and statements that had been reasonably corroborated. To the contrary, the district court questioned or set aside information that had not been or could not be tested or corroborated.

As applied, these parameters led to some information's acceptance as mitigating his behavior (Gordy's "tragic upbringing" in a "very dysfunctional" household "where things happened that shouldn't have happened," including his sexual abuse as a child) and some as aggravating (his long-lasting, "particularly hideous," and "terrible" conduct toward and with his victim, made worse by his "parental relationship" with her). The district court ultimately accepted the majority of the background information challenged by the government regarding Gordy's abuse-ridden upbringing, even if in a more general sense. The only detail specifically "set aside" was whether Gordy's mother was abused as a child in a particular context. Given the secondhand, uncorroborated nature of this statement, the district court's decision to question the reliability of this specific alleged event does not constitute error, let alone "obvious or clear" error. Nor did the decision to do so impact any of Gordy's rights, particularly in light of the insignificant impact accepting it would have had considering that the court already viewed his background of abuse as a child as a mitigating factor.

Aside from the handling of the challenged PSR information, the district court's denial of defense counsel's request to seek Gordy's testimony about that background information was not an abuse of discretion. Gordy is correct that the court explained how Gordy's own testimony about the details of his abusive childhood would add veracity and reliability to the information conveyed in the PSR. But, as discussed, the district court ultimately credited much of the PSR's information about Gordy's "tragic upbringing" and rejected the idea that it was implying Gordy was lying. So,

the only specific detail "set aside" in the court's analysis was whether Gordy's mother had been raped as a child. But again, even if Gordy had corroborated this event by taking the stand, we are hard-pressed to believe it would have impacted the court's § 3553(a) analysis, particularly when Gordy's own abuse as a child was already deemed to be a mitigating factor. So, not allowing Gordy to take the stand after evidence had closed was not an abuse of discretion.

## C. Expert Risk Testimony

Finally, Gordy asserts the district court erred by crediting "its own risk assessment" over expert testimony regarding his risk of reoffending. Because this is raised for the first time on appeal, we review for plain error. *Vonner*, 516 F.3d at 385.

To assist the court with its sentencing analysis, Gordy provided the court with expert testimony and reporting depicting his risk of reoffending. The expert witness, Dr. Kimberly Brown, evaluated Gordy using two leading statistical risk assessments, which placed him at a combined low risk of reoffending. At sentencing, the government cross-examined Dr. Brown regarding both Gordy's recidivism rate in general and the specific tests used. During cross-examination, the government called attention to, among other things, some of the tests' shortcomings. These shortcomings include factors the tests do not or cannot consider, such as offenses prior to "detection" or that go unreported or the details of the offense, e.g., length of abuse. The government also reiterated its concerns about Gordy's self-reporting of his childhood, as well as Gordy's minimization of his behavior and cognitive dissonance related to his charges.

The heart of Gordy's challenge is the district court's refusal to "draw really specific conclusions" from Dr. Brown's testimony. However, the district court's approach reveals no clear error. The district court accepted that the tests were the best available metric, while appreciating that the test results are only one of many considerations when evaluating an individual's risk of

reoffending, as Dr. Brown also alluded to. The district court's hesitancy to accept Dr. Brown's conclusions neither "spontaneously discredit[s]" the expert testimony nor replaces the testimony with its own views of Gordy's risk of reoffending—in part because the district court was reacting to limitations brought up by the government on cross-examination, which it is allowed to do. *See Souders*, 747 F. App'x at 277. Inherent in any interpretation of the evidence presented is that no matter how small, there is still a reoffending risk, but that the court "should not just presume, well, he did it before, he did it again."

We do not find plain error in acknowledging such residual risk—regardless of whether such acknowledgment is based on a specific psychosexual evaluation or the district court's interpretation of Gordy's conduct in the aggregate. This is particularly true in light of the court's countervailing acknowledgment that Gordy "does not rank high" on the risk assessments and its emphasis on giving him "a fair opportunity to be released one day." *See United States v. Cunningham*, 669 F.3d 723, 730 (6th Cir. 2012) (endorsing the defendant's failure to recognize the significance of his actions as part of the court's view of his recidivism risk). We have considered such a "personalized assessment" by the district court "just the sort of consideration required by 3553(a)." *Id.* at 731. As such, we do not find the district court's "comprehensive weigh[ing] and balance[ing of] a multiplicity of sentencing factors" to be plainly erroneous. *Id.*

## III. CONCLUSION

For the foregoing reasons, we affirm Gordy's sentence.